[Crim. No. 5093. First Appellate District, Division Two.—March 12, 1925.]

## F. F. COOPER et al., Appellants, v. T. A. REARDON et al., Respondents.

[1] MUNICIPAL CORPORATIONS—STREET RAILROAD FRANCHISES—MANDATORY CONDITIONS—MUNICIPALLY OWNED RAILWAY.—The provision of section 498 of the Civil Code that municipal authorities, in granting the right of way to street railroad corporations, must require such corporations "To plank, pave, or macadamize the entire length of the street, used by their track, between the rails, and for two feet on each side thereof, and between the tracks, if there be more than one," deals only with the conditions to be imposed by the municipal authorities in granting franchises to private corporations and individuals.

[2] ID.—INHERENT POWER TO OPERATE UTILITY—FRANCHISE NOT REQUIRED.—A city is not a private corporation when carrying on a municipally owned public utility; and a city does not require a franchise to operate a public utility for the benefit of its own citizens, as that power is inherent in the municipality if authorized by the charter under which it operates.

[3] ID.—STATUTORY CONDITIONS—APPLICATION TO CITIES.—When a city is engaged in the operation of a public utility for the benefit of its own citizens, it is not controlled by the statutory regulations covering conditions to be imposed in the grant of franchises to private corporations or individuals.

[4] STREET LAW—PAVING OF STREET OCCUPIED BY TRACKS—APPORTION-MENT OF COSTS—EXEMPTION OF CITY.—As neither section 498 of the Civil Code nor any other statute requires a municipality owning and operating a street railroad to keep in · order any portion of the streets occupied by its tracks, the provisions of sections 7, 8, and 9 of chapter II, article VI, of the San Francisco charter, relating to the apportionment of costs of street improvements, do not apply to said municipality.

[5] ID.—SAN FRANCISCO STREET IMPROVEMENT ORDINANCE—AUTHOR-IZED LEGISLATION.—Under the 1916 amendment of the San Francisco charter, the board of supervisors was authorized to adopt the street improvement ordinance of 1918.

[6] ID. — STREET ASSESSMENTS — EXEMPTION OF MUNICIPAL STREET RAILWAY — DISCRIMINATION — CONSTITUTIONAL LAW—APPEAL.—On this appeal, the contention that the provision of subdivision 13 of section 21 of the San Francisco street improvement ordinance of 1918 that the requirement that the expense of all work on the "portion of any street required by law to be kept in order by any person, company or corporation, having railroad tracks thereon, shall be borne and paid for by such person, company or corpora-tion," shall not be deemed applicable "to any street whereon rail-road tracks have been constructed and are being maintained by the city and county," is unconstitutional, in that it violates sec-tion 21 of article I of the state constitution, which prohibits the granting of privileges and immunities to any citizen which are not on like terms granted to all citizens, was made but it was not passed upon by the appellate court because it was not fully pre-sented by the briefs.

[7] ID.—COST OF SPECIAL PAVEMENT—EVIDENCE—FINDINGS—APPEAL.— In this action to set aside an assessment for street improvements in the city and county of San Francisco, the trial court having found, upon sufficient evidence, that the laying of basalt blocks on either side of the four rails was for the protection of the asphalt pavement of the street and not to benefit the railway, and that although the cost per square foot for laying basalt blocks was more than the cost of laying an equal surface of asphalt pavement, the total cost of laying basalt blocks on either side of the rails (as compared with the cost of paving with asphalt the same area, plus the area occupied by the rails) was less be-cause of the space occupied by the rails, there was no merit in the contention on appeal that the assessment was void because it placed a burden on a few for the benefit of all, in that the work of laying the basalt blocks was part of the maintenance of the railway line rather than an improvement of the street and the cost thereof should have been paid by the entire city and not included in the assessment.

[8] ID.—EXCESSIVE ASSESSMENT — FAILURE TO PROTEST TO SUPER-VISORS—APPEAL—RECORD—JUDGMENT—PRESUMPTIONS.—On appeal

from a judgment in favor of the defendants in an action against the municipal officers and the contractor to set aside a street assessment, where the record shows that plaintiff appealed to the board of supervisors in protest against the assessment, but the grounds of such protest do not appear, and the record further shows that the point that the assessment against plaintiff's lot was greater than it should have been, when calculated according to the bid and the contract, was not raised in the pleadings before the trial court, and that no finding was made thereon, the appellate court must assume, in support of the judgment of the trial court, that the appeal to the board of supervisors was not taken on the ground that the assessment was excessive; and, therefore, that point cannot be raised on appeal for the first time.

(1) 36 Cyc., p. 1406, n. 20. (2) 28 Cyc., p. 301, n. 37 New; 36 Cyc., p. 1406, n. 20. (3) 28 Cyc., p. 301, n. 37 New. (4) 28 Cyc., p. 1120, n. 95. (5) 28 Cyc., p. 955, n. 97 New. (6) 4 C. J., p. 1071, n. 32. (7) 28 Cyc., p. 1130, n. 1 New. (8) 4 C. J., p. 786, n. 18, 22.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank J. Murasky, Judge. Affirmed.

The facts are stated in the opinion of the court.

Sawyer & Sawyer and F. W. Sawyer for Appellants.

George Lull, City Attorney, Milton Marks, Assistant City Attorney, Oscar Samuels and Jacob Samuels for Respondents.

NOURSE, J.—The plaintiffs, as abutting property owners along a public street in San Francisco, brought this action to set aside an assessment for improvement of the street levied under the San Francisco street improvement ordinance of 1918. The defendants are the members of the board of public works of the city and county and the contractor who performed the work which was the basis of the assessment. The cause was tried by the court and judgment went for the defendants from which the plaintiffs appeal under section 953a of the Code of Civil Procedure.

The controversy revolves about the single fact that over the entire portion of the street included in the assessment the city owned and operated a municipal street railway and that

in the improvement of the street the abutting property owners were assessed to pay the entire cost of the street improvement, including the paving between the rails of the street railway and for two feet on each side thereof, whereas, in the case of a privately owned street railway, this cost is imposed upon the owner of the railway.

The appellants designate six points as grounds for a reversal of the judgment. We will consider them in the order presented.

[1] (1) That the assessment violates section 498 of the Civil Code. This section reads in part as follows: "The city or town authorities, in granting the right of way to street railroad corporations . . . must require a strict compliance with the following conditions . . . Second: To plank, pave, or macadamize the entire length of the street, used by their track, between the rails, and for two feet on each side thereof, and between the tracks, if there be more than one." The appellants have not made any argument or cited any authorities in support of their point, but the respondents point out that the section is found in part 4 of division first of the Civil Code, which relates solely to private corporations and has no reference to public utilities owned and operated by municipalities for the public benefit. The arrangement of the section in this part of the code, as well as the context of the section itself, makes it apparent that it deals only with the conditions to be imposed by the municipal authorities in granting franchises to private corporations and individuals. [2] Now a city does not require a franchise to operate a public utility for the benefit of its own citizens; that power is inherent in the municipality if authorized by the charter under which it operates. "It is not true that a city is a private corporation when carrying on a municipally owned public utility. No decision so holds. All the decisions on the subject recognize the fact that a city does not change its character by engaging in such enterprises." (*City of Pasadena* v. *Railroad Com.*, 183 Cal. 526, 530 [10 A. L. R. 1425, 192 Pac. 25].)

[3] Such being the case, when a city is engaged in the operation of such a public utility, it is not controlled by statutory regulations covering conditions to be imposed in the grant of franchises to private corporations or individ-

uals. (*United Railroads of San Francisco* v. *San Francisco,* 249 U. S. 517, 520 [63 L. Ed. 739, 39 Sup. Ct. Rep. 361, see, also, Rose's U. S. Notes Supp.]; *United Railroads of San Francisco* v. *San Francisco,* 239 Fed. 987, 994; *Knoxville Water Co.* v. *Knoxville,* 200 U. S. 22, 36 [50 L. Ed. 353, 26 Sup. Ct. Rep. 224, see, also, Rose's U. S. Notes].)

[4] (2) That the assessment violates sections 7, 8, and 9 of the San Francisco charter, meaning, we assume, sections 7, 8, and 9 of chapter II, article VI, of that charter. The only argument advanced by appellants on this point relates to that portion of the charter sections cited which provides that: "The expense of all work on such portion of any street required by law to be kept in order by any person, company, or corporation, having railroad tracks thereon, shall be borne and paid for by such person, company or corporation, and shall be included in the assessment hereinbefore provided for." The argument is that as section 498 of the Civil Code places the expense of paving the roadbed on the municipality, the assessment should have charged the cost of that portion of the work to the city and the assessments upon the abutting owners should have been reduced accordingly. But we have seen that the code section does not require the municipality to bear the cost of this work and we have not been referred to any other statute which places this burden on the city. Therefore, the city is not "required by law" to keep that portion of the street in order and the charter sections relating to the apportionment of the cost of street improvements do not apply to a municipally owned street railway.

[5] (3) That the ordinance of 1918, under which the assessment was made, is void. The argument is that, as the city charter was amended in 1911 authorizing the board of supervisors to "adopt *an* ordinance which may from time to time be revised or amended, providing a method of procedure for such improvement and assessment," and that, as the board did in 1913 adopt an ordinance providing such a method, its power was then exhausted and the ordinance of 1918, being a new ordinance, was beyond the charter authority. But the appellants neglected to inform us that the charter was again amended in 1916, giving the board of

supervisors similar authority and that the ordinance of 1918 was adopted in accordance with the 1916 amendment.

[6] (4) That the ordinance of 1918 is void as offending the constitutional inhibition against class legislation. The attack under this subdivision is directed to that portion of subdivision 13 of section 21 of the ordinance of 1918 which, after requiring "the expense of all work on such portion of any street required by law to be kept in order by any person, company or corporation, having railroad tracks thereon, shall be borne and paid for by such person, company or corporation . . . ," contains the following proviso: "The provisions of this subdivision shall not be deemed applicable to any street whereon railroad tracks have been constructed and are being maintained by the city and county." The argument is that this exemption imposes an unequal burden on those property owners abutting a street whereon the city maintains a street railway as against those abutting a street whereon a private corporation operates a street railway, and this, it is said, violates the provisions of section 21 of article I of the state constitution, which prohibits the granting of privileges and immunities to any citizen which are not on like terms granted to all citizens. No authorities are cited in support of appellants' point and the argument is merely a statement of the proposition advanced. The respondents have been content to submit the point merely upon the statement that the distinction made by the ordinance is one between the municipality and a privately owned street railway and not one between property owners subjected to assessments to pay for street improvements.

The ordinance has been in force for more than six years and has been made the basis of a large number of street improvement proceedings. Through these proceedings assessments have been made upon properties widely scattered throughout the city and property rights have grown up as a result. The ordinance has been before the courts on several occasions and has been sustained against constitutional attack generally, but the question here presented has not been passed on. We do not feel that we should seek to determine this question without having it fully presented, and we do not feel that it is incumbent upon us to assume the

burden of original research to support the position of either party to the appeal.

[7]    (5) That the assessment is void because it places a burden on a few for the benefit of all. As we understand the position of appellants under this heading, it is that as the work called for the laying of basalt blocks on either side of the four rails and that as this was properly a part of the maintenance of the railway line rather than an improvement of the street, the cost thereof should have been paid by the entire city and should not have been included in the assessment.

The evidence was that the basalt blocks were laid to protect the asphalt pavement of the street from being broken by vehicular traffic and not to benefit the railway. It was also shown that, though the cost per square foot of laying these blocks was more than the cost of laying an equal surface of asphalt pavement, the total cost was less because of the space occupied by the rails. The trial court found in accordance with this evidence and held that none of the appellants suffered any detriment by reason of the fact that these basalt blocks were laid. These findings are supported by the evidence and the appellants do not argue to the contrary. They dispose of their objection to the assessment as they demonstrate that the appellants were charged for street improvement work only and not with the cost of improving the railway system.

[8]    (6) That the assessment is void because it is in excess of the contract price. The appellants instance the case of Mr. Wright, who was one of the plaintiffs below—the owner of a twenty-five foot lot. The assessment against this lot was $247.93. Appellants claim that it should have been $227.68 when calculated according to the bid and the contract. The reason for the difference in these figures is not explained in any of the briefs, but it does appear that these appellants appealed to the board of supervisors in protest against the assessments, and that these protests were overruled.

The appellants have not directed our attention to any portion of the record showing what grounds were urged before the supervisors on these appeals, but from our own examination it appears that the point now urged was not

raised in the pleadings before the trial court and no finding was made thereon. We must assume, in support of the judgment, that the appeals were not taken on the ground now urged and the point cannot, therefore, be raised by appellants at this time. (*Federal Construction Co.* v. *Newhouse*, 186 Cal. 284, 289 [199 Pac. 519].)

Judgment affirmed.

Sturtevant, J., and Langdon, P. J., concurred.

Appellants' petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 11, 1925.

All the Justices concurred.